MR. JUSTICE GROVES
delivered the opinion of the Court.
Pueblo West Metropolitan District (the District) appeals from a judgment of the district court setting aside a special election concerning an increase in the 1979 local tax levy. We affirm.
The district sought permission from the Colorado Division of Local Government to levy a tax which would increase its revenue over seven percent from the previous year. Permission was denied on November 13, 1979. Pursuant to section 29-1-302, C.R.S. 1973, which provides for voters’ approval even after a denial by the Colorado Division, the District decided to hold an election. On December 12, 1978, the voters approved the levy.
On January 11, 1979, Stegon sought an order setting aside the election on the ground that the District had not complied with the notice provisions of section 29-1-302(3), C.R.S. 1973 which reads:
“Due notice of submission of the question of whether to grant the increased levy shall be given by the appropriate official designated by law for at least thirty days in advance of the date set for the general or special election by publication in some newspaper published in such taxing district.”
The first notice of the election appeared in the Pueblo Chieftain on November 18, 1978.
The District appeals from the judgment setting aside the election on the following grounds: (1) that Stegon cannot prevail because he did not plead a cause of contest designated in section 1-10-101, C.R.S. 1973; (2) that the election is valid because none of the irregularities affected the *130 result; (3) that Stegon should have protested the election within ten days as provided by section 1-10-110(3), C.R.S. 1973; and (4) that an election was not a prerequsite to the levy since the portion of the levy applied to general operating expenses did not increase by more than seven percent the revenue applied to general operating expenses the previous year.
I.
The District first argues that Stegon may contest the election only by alleging one of the causes of contest set forth in section 1-10-101, C.R.S. 1973. This argument has no merit because this section relates only to elections of officials, and not to other elections.
To determine applicable bases of an action contesting an election on a tax levy, it is necessary to examine pertinent statutory provisions. Section 29-1-302(3), C.R.S. 1973, quoted above, is one such statute. It sets up a notice requirement which the District did not meet and provides a proper basis for Stegon’s suit. See Jardon v. Meadowbrook-Fairview Metropolitan District, 190 Colo. 528, 549 P.2d 762 (1976) in which this court analyzed separately compliance with notice requirements and claims made pursuant to section 1-10-110, C.R.S. 1973.
II.
The second issue is whether failure to comply with the notice provisions of section 29-1-302(3), C.R.S. 1973 warrants setting aside the election. The District maintains that the failure was a mere technical irregularity and that the election remains valid because no mandatory requirement was violated, no fraud occurred, and the irregularities of notice did not affect the outcome. We disagree.
Here notice was first published 24 days prior to the election. Section 29-1-302(3), C.R.S. 1973 explicitly provides that at least 30 days’ notice by newspaper publication “shall be given” when the question of an increased levy is submitted to the electorate. The statute is specific and its language mandatory.
The majority of courts hold that notice requirements for special elections should be construed more strictly than for general elections. These courts differ as to whether the notice should be evaluated under standards of strict compliance or under standards of substantial compliance. See 26 Am. Jur. 2d 195; Annot., 119 A.L.R. 661 (1939).
We determine that the better rule is to require strict compliance when evaluating the notice of a special election within a district. The stricter rule gives effect to the legislative mandate and insures that the objective of insuring adequate notice will be achieved. The rule also avoids difficulties in determining what constitutes substantial compliance and problems of proof connected with determining whether defects in notice affected an election’s outcome. We, therefore, hold that the statutory language is mandatory and should be strictly construed.
*131 III.
The next issue concerns the amount of time which Stegon had to contest the election. The District contends that the 10-day limit of section 1-10-110(3), C.R.S. 1973 applies, while Stegon maintains that he had 30 days under section 32-1-840, C.R.S. 1973. The former statute clearly refers to contests of elections of county officers. Section 32-1-840, C.R.S. 1973, on the other hand, provides for 30 days “to contest the election of any person or the results of election on any question.'’’’ (Emphasis added.) The latter provision governs in this instance. See also, Jardon, supra.
IV.
The District’s final contention is that no election was necessary because the proposed levy would not increase revenue more than seven percent compared to the previous year. General revenue increased from $281,573.00 in 1978 to $494,603.00 in 1979. The funds for debt service were reduced from $531,212.00 to $293,363.00. The District maintains that the reduction in debt service funds exceeded the increase in general revenue funds, thereby effecting an overall net reduction, so the total increase was less than seven percent.
The District relies upon section 29-1-301(1), C.R.S. 1973 for the authorization to subtract the reduction in debt service before computing the percentage of increase in the general revenue. The statute reads in part:
“(1) Except as otherwise provided, all statutory tax levies when applied to the total valuation for assessment of the state, each of the counties, cities, and towns not chartered as home rule, and each of the fire, sanitation, irrigation, drainage, conservancy, and other special districts established by law, shall be so reduced as to prohibit the levying of a greater amount of revenue than was levied in the preceding year plus seven percent except to provide for the payment of bonds and interest thereon.” (Emphasis added.)
We do not accept the District’s interpretation of the statute. Under sections 32-3-114(l)(e), 32-4-124, C.R.S. 1973, when a metropolitan district determines that an increase in the district’s indebtedness exceeding $5,000 or one percent of the value of the district’s taxable property would be desirable, the board must submit the proposed increase to the vote of the electorate. Thus, the question of any increase in a district’s indebtedness is a matter separate from an increase in general revenues. Similarly, it follows from section 29-1-301(1), C.R.S. 1973 that any decrease in a district’s debt service is a separate matter and cannot be offset against the increase in general revenue so as to reduce the percentage increase.
Judgment affirmed.